UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARWANI DYAL DEOKI,

v. Case No. 8:25-cv-1252-WFJ-TGW

FRANK BISIGNANO,
Commissioner of Social Security.

---

REPORT AND RECOMMENDATION

The plaintiff seeks judicial review of the denial of her claim for disability insurance benefits, arguing that the law judge erred in analyzing her severe impairment of fibromyalgia.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence, I recommend that the decision be affirmed.

I.

The plaintiff, who was forty-seven years old on the date she was last insured and who has a college degree, has past relevant work as an executive assistant and a companion (Tr. 25, 40). She filed a claim for disability insurance benefits, alleging that she became disabled due to

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.

"[o]varian cancer; Full clinical trial of Taxol & Carboplatin chemotherapy; neuropathy; connective tissue disease; Fibromyalgia/Osteoarthritis; Dizziness; nausea, [and] fatigue" (Tr. 80). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had, as of the date last insured, severe impairments of fibromyalgia and status-post ovarian cancer (Tr. 19). The law judge concluded that through the last date she was insured the plaintiff had the residual functional capacity to perform a reduced range of light work (Tr. 22). Specifically, the law judge found:

> the claimant ha[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except … occasionally climb ladders, ropes, scaffolds, ramps, and stairs, … occasionally balance, kneel, stoop, crouch, and crawl, can frequently grasp, finger, and reach with the bilateral upper extremities, and can perform simple routine repetitive tasks involving only simple work related decisions.

The law judge concluded that the plaintiff was unable to perform any past relevant work during this time (Tr. 25). However, based upon the testimony of a vocational expert, the law judge found that jobs existed in significant numbers in the national economy that the plaintiff could have performed, such as router, office helper, and mail clerk (id., Tr.

26). Accordingly, the law judge decided that the plaintiff was not disabled (id.).

The plaintiff filed an appeal with the Appeals Council and it declined her request for review (see Tr. 1). Therefore, the Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy

itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's analysis of her fibromyalgia. As discussed in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996):

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Furthermore, the symptoms of fibromyalgia "can wax and wane so that a person may have bad days and good days." Bailey v. Soc. Sec. Admin., Comm'r, 791 Fed. Appx. 136, 142–43 (11th Cir. 2019).

Fibromyalgia "is a common syndrome." Social Security Ruling (SSR) 12–2p; 2012 WL 3104869 at *2. "Some people may have such a

severe case of fibromyalgia as to be totally disabled from working, .... but most do not." Sarchet v. Chater, supra, 78 F.3d at 307.

The law judge found that the plaintiff's fibromyalgia was a severe impairment that substantially limited her to a reduced range of light work. The plaintiff argues that, in finding her not disabled, the law judge failed to evaluate properly two medical opinions. Additionally, the plaintiff contends that the credibility determination was flawed (Doc. 11).

IV.

The plaintiff argues that the law judge failed to evaluate properly the opinions of consultative examiner Dr. Nahesi Lambert-Doorn and treating physician Dr. Julie S. Nusbaum (id., pp. 16-20).

The updated regulations governing the assessment of medical opinion evidence state (20 C.F.R. §404.1520c(a)):

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative medical finding(s), including those from your medical sources.

Rather, medical opinions and prior administrative medical findings are to be considered for their persuasiveness based upon the following factors:

(1) Supportability.
(2) Consistency.
(3) Relationship with the claimant [including]
(i) Length of the treatment relationship.
(ii) Frequency of examinations.
(iii) Purpose of the treatment relationship.
(iv) Extent of the treatment relationship.
(v) Examining relationship.
(4) Specialization.
(5) Other factors.

20 C.F.R. §404.1520c(c)(1) – (5).

Supportability and consistency are the two most important factors. 20 C.F.R. §404.1520c(a);(b)(2). Indeed, law judges are not even required to explain how they considered factors 3 through 5, 20 C.F.R. §404.1520c(b)(2), unless the record contains differing, but equally persuasive, medical opinions or prior administrative medical findings about the same issue. 20 C.F.R. §404.1520c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §404.1520c(c)(1). However, the absence of objective abnormalities in connection with fibromyalgia does not mean the opinion is unsupported.

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §404.1520c(c)(2).

A. Dr. Nahesi Lambert-Doorn.

Dr. Lambert-Doorn conducted a neurological examination of the plaintiff (see Tr. 681-684). She opined that the plaintiff "has a moderate limitation in heavy lifting, carrying, prolonged standing, walking, pushing, and pulling, and must avoid positional activities which require balance" (Tr. 24). The law judge found Dr. Lambert-Doorn's assessment largely persuasive (id.).

The plaintiff argues that the law judge's "determination that [the plaintiff] could perform light work is inconsistent with the moderate limitations for walking or prolonged standing Dr. Lambert-Doorn assessed" (Doc. 11, p. 16). The plaintiff does not present legal authority holding that "moderate limitations" in walking and standing are inconsistent with light work (see Doc. 6 (The Scheduling Order and Memorandum Requirements state that discrete challenges be supported by citations of the governing legal standards.)).

On the other hand, there is ample authority holding that a limitation to light work accounts for moderate limitations in standing and/or walking. The court in Laura A. v. Kijakazi, elaborated:

> [C]ourts have found that a "restriction to light work"—which … requires about six hours of standing and/or walking—"is appropriate for an individual limited to a moderate amount of standing and/or walking."

No. 21-CV-451 (GMH), 2022 WL 3644810 at *15 (D.D.C. Aug. 24, 2022) (citation omitted); see also Katherine R. v. Comm'r of Soc. Sec., No. 1:20-CV-01055-MJR, 2021 WL 5596416, at *5 (W.D.N.Y. Nov. 30, 2021) (listing cases holding that "courts within this Circuit have consistently held that mild and moderate limitations … are consistent with an RFC for light work").

Similarly, the law judge could reasonably find, based on Dr. Lambert-Doorn's evaluation of the plaintiff, that Dr. Lambert-Doorn's opinion of "moderate limitations" in walking and prolonged standing is consistent with light work (see Tr. 24).[2] Therefore, this unsupported argument fails.

---

2 The law judge did not accept Dr. Lambert-Doorn's opinion that the plaintiff may not engage in positional activities which require balance (Tr. 684). That distinction is not raised in this argument.

B. <u>Julie S. Nusbaum</u>.

The plaintiff also argues that the law judge's analysis of Dr. Nusbaum's opinions was inadequate and not supported by substantial evidence. This contention is unavailing.

Dr. Nusbaum opined in a Medical Source Statement that the plaintiff was essentially disabled from working. As the law judge summarized:

> Treating source Dr. Julie Nusbaum opined that the claimant can sit for about 2 hours in an 8 hour workday, can stand/walk for less than 2 hours in an 8 hour workday, can never lift and carry any weight, can occasionally grasp, turn, twist, and reach with the bilateral upper extremities, can occasionally use fine manipulation skills with the bilateral upper extremities, and will be absent for 4 or more times per month due to her impairments. (Exhibit 14F).

(Tr. 23). The law judge found Dr. Nusbaum's assessment minimally persuasive (Tr. 24). He explained:

> Ms. Nusbaum's assessment, while supported by her treatment history with the claimant, is ultimately inconsistent with the claimant's subjective reports and treatment plan. For example, fibromyalgia typically improves with movement, which is why one treating provider recommended that the claimant get at least 4 hours of exercise a week. Moreover, references regarding pain when walking are minimal, and the claimant reported that she experiences

> improvement in her morning stiffness when walking around. Further, the doctor's assessment is inconsistent with the claimant apprehension to take medications such as pills, even though the medications could provide her significant relief. (See e.g., Exhibit 11F/83). Although the claimant tried medication such as gabapentin, she only gave the medication 2-3 weeks to work, and was taking significantly less than the therapeutic dose of gabapentin. The doctor's assessment is also inconsistent with that of state medical consultants Pradham and Lee, each of whom provided far less restrictive limitations and is also inconsistent with the assessment of treating source Hindenburg, who provided for no limitations.

The law judge's explanation for discounting Dr. Nusbaum's opinion of extreme limitations is adequate and is supported by substantial evidence. See Richardson v. Perales, supra, 402 U.S. at 401 (Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) ("Substantial evidence is something "more than a mere scintilla, but less than a preponderance.").

The plaintiff quibbles with several aspects of the law judge's explanation. Since the law judge's determination is supported by substantial evidence, it is insufficient for the plaintiff to merely identify evidence that could support a finding of disability; rather, she must identify record evidence that compels a more restrictive residual functional capacity

(RFC). See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (The court may not "re-weigh the evidence or substitute our own judgment" for that of the ALJ, even if the court were to conclude that the evidence preponderates against the ALJ's decision.). The plaintiff does not satisfy this stringent burden.

The plaintiff argues first that the law judge "substituted his own opinion for that of a medical professional" when he stated that the plaintiff's fibromyalgia improved with movement, and that the plaintiff was advised to walk four hours weekly as treatment for fibromyalgia (Doc. 11, p. 17). This contention is baseless because these are statements from the record, not the law judge's opinions. Thus, rheumatologist Dr. Paula Rackoff stated that "[s]he is to walk 4 hours/week…" (Tr. 455) and Dr. Nusbaum advised the plaintiff to engage in mild intensity exercise (Tr. 959). Furthermore, the plaintiff reported to her physician that her stiffness improved with movement (see Tr. 956).

The plaintiff also challenges the law judge's consideration of, and finding that, Dr. Nusbaum's opinion of extreme functional limitations is inconsistent with Dr. Nusbaum's conservative treatment plan. An inconsistency between a conservative course of treatment and an opinion of debilitating limitations may reduce the persuasiveness of a physician's opinion. See Horowitz v. Comm'r of Soc. Sec., 688 Fed. Appx. 855, 861–62 (11th Cir. 2017), citing Wolfe v. Chater, 86 F.3d 1072. 1078 (11th Cir. 1996); Fernandez v. Comm'r of Soc. Sec., 646 Fed. Appx. 789, 792 (11th Cir. 2016); see, e.g., Collins v. Berryhill, No. CV 116-019, 2017 WL 3613988, at *6 (S.D. Ga. Aug. 1, 2017). Thus, a conservative treatment plan may suggest that a plaintiff's impairments—while significant—are not debilitating.

Dr. Nusbaum's treatment plan included mild-intensity exercise, "sleep hygiene," "measures to improve mood," and prescription medication (Tr. 959, 978, 1037). The law judge could reasonably find that Dr. Nusbaum's opinion of extreme functional limitations, which included that the plaintiff could "rarely to never" lift or carry even one pound or sit for more than two hours in a workday (Tr. 1069), was inconsistent with such a conservative treatment plan. Therefore, the law judge did not err in

considering Dr. Nusbaum's conservative treatment plan in finding unpersuasive Dr. Nusbaum's opinion of extreme functional limitations.

The law judge also considered the plaintiff's non-compliance with her treatment plan. A law judge may consider a plaintiff's non-compliance with a treatment plan in determining the persuasiveness of a physician's opinion of disabling limitations. See 20 C.F.R. §404.1520c(c)(2). The law judge stated in pertinent part:

> …. [t]he claimant reported that she merely takes Advil and Tylenol for her pain because she is "'not a big pill person.'" (Exhibit 11F/83). Moreover, while the claimant was prescribed pregabalin, she reported she had not started the medication. (Exhibit 13F/9). Further, when the claimant was prescribed gabapentin, she was prescribed a non-therapeutic dose, presumably to start, and discontinued use after merely 2-3 weeks. (Exhibit 11F/46). Additionally, the claimant's treatment provider recommended about 4 hours of walking a week for her fibromyalgia pain, and the claimant noted that her stiffness improved with movement. (Exhibit 4F/7). Finally, the claimant was prescribed physical therapy, but unfortunately there does not seem to be any reference to physical therapy in the record. (Exhibit 11F/86).

(Tr. 23).

The plaintiff argues that the law judge mischaracterized the evidence because the law judge failed to consider whether the plaintiff stopped taking the medication because it was ineffective. This contention

fails. The medications upon which the law judge based his finding of non-compliance are pregabalin and gabapentin (see Tr. 20, 23). The plaintiff did not start pregabalin (see Tr. 1060), so there is no basis to conclude pregabalin was ineffective.

Further, the law judge's point about gabapentin was that the plaintiff discontinued taking the medication before she gave it an adequate opportunity to be effective.[3] Substantial evidence supports that inference (see Tr. 959 (Dr. Nusbaum prescribed "trial low dose gabapentin" and told the plaintiff to "uptitrate … as discussed)).[4] The plaintiff's report to her physician that she was not a "big pill person," and only occasionally took Advil for her symptoms, buttresses the law judge's finding that the plaintiff's non-compliance with prescription medication is inconsistent with her subjective complaints of debilitating symptoms.

Finally, the plaintiff contends that the law judge failed to consider medication side effects as the reason the plaintiff was not compliant with prescribed treatment (Doc. 11, p. 25). There is nothing in the

---

3 Contrary to the plaintiff's assertion that gabapentin was ineffective, she reported to consultative examiner Dr. Lambert-Doorn that "she does take gabapentin" and that it does "offers some relief" (Tr. 681).

4 The plaintiff contends that the law judge had no basis to state gabapentin "could provide significant relief." This argument is unpersuasive. As indicated, the import of the law judge's statement was not that results were guaranteed, but that the plaintiff did not give the medication an adequate opportunity to determine if it would be effective.

treatment records suggesting that the plaintiff experienced side effects from taking gabapentin or pregabalin, the two medications that were the focus of the law judge's finding of non-compliance (see Tr. 20, 23).

Furthermore, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). The law judge stated that he had considered the plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and SSR 16-3p (Tr. 22) which includes side effects of medications. See Robinson v. Comm'r of Soc. Sec., 649 Fed. Appx. 799, 802 (11th Cir. 2016) (finding that ALJ who did not specifically mention testimony about medication side effects considered side effects because she cited to regulations that said she had to consider medication side effects when evaluating the claimant's subjective pain testimony.). Therefore, this argument is unpersuasive.

In sum, the law judge could reasonably infer that the plaintiff's apprehension to take gabapentin and pregabalin—which were prescribed in an attempt to ameliorate the plaintiff's symptoms—was inconsistent with the plaintiff's subjective complaints of disabling pain and other symptoms.

Finally, the plaintiff argues that the law judge misapprehends the nature of fibromyalgia, the hallmark of which is a lack of objective evidence of abnormalities (Doc. 11, pp. 18-20). A diagnosis of fibromyalgia does not require a law judge to a plaintiff's subjective complaints fully credible. See SSR12-2p; see also Sarchet v. Chater, supra, 78 F.3d at 307 ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working ..., but most do not.").

Furthermore, the law judge did not misapprehend the nature of fibromyalgia. Thus, the law judge rejected Dr. Hindenburg's opinion that the plaintiff has no limitations "because it [wa]s inconsistent with the claimant's subjective reports of pain and presentation of tender points" (Tr. 24), two hallmarks of fibromyalgia.

In sum, the law judge identified substantial evidence supporting his rejection of Dr. Nusbaum's opinion of extreme functional limitations, and the plaintiff's challenges to that decision are unavailing. Thus, the plaintiff's disagreement with the law judge is essentially a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. See Graham v. Bowen, 790

F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court.").

V.

The plaintiff's final argument is that the law judge did not consider her subjective complaints of disabling pain and other symptoms in accordance with Social Security Ruling (SSR) 12-2p, which governs the evaluation of fibromyalgia (Doc. 11, pp. 19-20). This argument fails.

The plaintiff reported feeling frequent fatigue, morning stiffness, and foot pain (Tr. 23). She stated that, on most days, joint pain makes standing painful and it is difficult to find a comfortable sitting position (Tr. 47). Additionally, she testified that neuropathy that causes numbness and shooting pains, and that her hands hurt a lot and are stiff at times (Tr. 48, 61).

It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d at 656; Mitchell v. Commissioner of Social Security, 771 F.3d 780, 782 (11th Cir. 2014) (stating that "credibility determinations are the province of the [law judge]" and that the court "will not disturb a clearly articulated credibility finding supported by substantial evidence") (internal citations omitted).

When, as here, a law judge determines that a claimant has a determinable impairment of fibromyalgia

> the [law judge] must evaluate the intensity and persistence of the [fibromyalgia] symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. Id. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. Id. § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence and consider whether there are any inconsistencies or conflicts between those statements and the record. Id. § 404.1529(c)(4).

Strickland v. Comm'r of Soc. Sec., 516 Fed. Appx. 829, 831–32 (11th Cir. 2013); SSR 12-2p.

The plaintiff argues that the law judge's credibility analysis was inadequate because "there was no application of, or even reference to, SSR 12–2p" in the decision (Doc. 12, p. 6; see also Doc. 11, p. 22). This

contention is meritless. The law judge was not required to cite SSR 12-2p in the decision because he considered the criteria in the decision. See Smith v. Soc. Sec. Admin., Comm'r, No. 4:20-CV-01604-NAD, 2022 WL 855563 at *10 (N.D. Ala. Mar. 22, 2022) ("Because the ALJ properly analyzed Smith's claim for benefits given her fibromyalgia based on that five-step test, Smith has identified no error in the ALJ's lack of a citation to SSR 12-2p."). Thus, as permitted under SSR 12-2p and §404.1529(c), the law judge considered the inconsistency of the plaintiff's subjective reports of disabling symptoms with her history of conservative treatment, the plaintiff's non-compliance with the prescribed treatment, daily activities, normal examination findings, and the opinions of three physicians—two reviewing doctors and one consulting physician—each of whom opined that the plaintiff retained the capacity to do a range of light work.

The plaintiff contends that the law judge improperly discredited the plaintiff's subjective complaints based on normal examination findings (Doc. 11, p. 23), and asserts that such findings "are irrelevant to an analysis of disabling symptoms" (Doc. 15, p. 5). This argument is meritless.

Although objective evidence is not required to substantiate a plaintiff's subjective claims of disabling symptoms due to fibromyalgia, the lack of such evidence is a valid consideration. See SSR 12-2p citing 20

C.F.R §§ 404.1529(c). Thus, it is not error for the law judge to note a lack of objective evidence, so long as the law judge did not give undue weight to its absence in evaluating the claimant's statements. See Lorenzi v. Comm'r, Soc. Sec. Admin., 550 Fed. Appx. 855, 857 (11th Cir. 2013) ("Although we have indicated that the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' ... the ALJ relied on the inconsistencies between Lorenzi's descriptions of her daily activities, the objective medical evidence, and her claims of pain.").

The law judge did not give undue weight to the plaintiff's essentially normal examinations, as he stated several grounds for discounting her credibility (Tr. 23, 25). Indeed, the plaintiff challenges two of those reasons.

The plaintiff argues that the law judge's consideration of the plaintiff's conservative treatment plan was inappropriate (Doc. 11, p. 24). This contention is unavailing because law judges "are permitted to consider the type of treatment a claimant received in assessing the credibility of [a claimant's] subjective complaints." Horowitz, 688 Fed. Appx. at 863.

The plaintiff also challenges the law judge's finding that the plaintiff's apprehension to take medication is inconsistent with her

complaints of debilitating pain (Doc. 11, p. 18). That argument is addressed supra, pp. 15-16.

The law judge also found that the plaintiff's activities of daily living were inconsistent with her subjective complaints of disabling pain and other limitations. It is well-established that a law judge may consider a plaintiff's daily activities in evaluating and discrediting a claimant's subjective complaints." Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).

The plaintiff told Dr. Lambert-Doorn that she took care of herself and cooked, and did cleaning, laundry, and shopping with assistance from her husband (Tr. 682). The plaintiff testified that she could drive short distances (Tr. 62), and she told her physician that she flew between Florida and New York for doctors' appointments (Tr. 21, 23). Additionally, the plaintiff flew on long-distance flights to Italy and Australia (Tr. 439). Moreover, the plaintiff reported to her physician that she was trying to start a jewelry line (Tr. 23, 436).[5]

The law judge could reasonably find that the plaintiff's activities of daily living were inconsistent with her subjective complaints of

5 Contrary to her hearing testimony, the plaintiff also told her physician in 2021 that she was "the only one caring for her mother and raising her own 4-year old son then caring for husband" (Tr. 445).

debilitating pain, thereby undermining her credibility. See Moore, 405 F.3d at 1212 (finding no reversible error when the ALJ discounted plaintiff's testimony of pain related to fibromyalgia when the ALJ's decision included references to the plaintiff's ability "to drive, provide childcare, bathe and care for herself, exercise, and perform housework"); Hennes v. Comm'r of Soc. Sec. Admin., 130 Fed. Appx. 343, 348-49 (11th Cir. 2005) ("the degree of Hennes's complaints [of disabling fibromyalgia symptoms] … were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet");

The plaintiff argues that the plaintiff's activities do not show she can perform substantial gainful activity (Doc. 11, p. 25, citing Fargnoli v. Massanari, 247 F.3d 34, 40 n.5 (3d Cir. 2001)). The law judge did not make such a finding; he properly considered the plaintiff's activities as one factor in determining her credibility. See SSR 12-2p citing 20 C.F.R. § 404.1529(c)(3), (4); see Moore, 405 F.3d at 1212; Hennes, 130 Fed. Appx. at 348-49.

Finally, the law judge considered that the plaintiff's allegations are "contradicted by the majority and more persuasive medical opinion evidence of record" (Tr. 25). See SSR 12-2p, 2012 WL 3104869 at *5. In

this respect, the law judge cited to the opinions of consultative examiner Dr. Lambert-Doorn and state reviewing physicians Dr. R. Pradham, M.D., and Dr. A. Lee, M.D., that the plaintiff could perform a range of light work (see Tr. 94-98); 20 C.F.R. § 404.1513a(b)(1) ("our Federal or State agency medical … consultants are highly qualified and experts in Social Security disability evaluation.").

Overall, the reasons given by the law judge are adequate and supported by substantial evidence. Therefore, this court is not authorized to overturn the law judge's credibility determination. See Arnold v. Heckler, 732 F.2d 881, 883–84 (11th Cir.1984).

VI.

For these reasons, the decision of the Commissioner is supported by substantial evidence. I therefore recommend that the decision be affirmed.

Respectfully submitted,

ANTHONY E. PORCELLI
UNITED STATES MAGISTRATE JUDGE

DATED: July 28, 2026

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.